## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TEACHING STRATEGIES, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. WMN 02 CV 35 61 |
| ) | |
| **TEACHER STREET, INC.** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MOTION FOR ENTRY OF DEFAULT
## AND FOR DEFAULT JUDGMENT

Plaintiff Teaching Strategies, Inc. hereby moves the Court for entry of default pursuant to Fed. R. Civ. P. 55(a) and for a default judgment pursuant to Fed. R. Civ. P. 55(b) against the Defendant Teacher Street, Inc. In support thereof, Plaintiff states as follows:

1.      Teaching Strategies, Inc. filed its Complaint for Trademark Infringement, Trademark Dilution and Unfair Competition against Teacher Street, Inc. on December 30, 2002, which Complaint was served on the president and registered agent of Teacher Street, Inc. on January 25, 2003 via private process server. A Return of Service was filed with this Court on February 20, 2003.

2.      Defendant Teacher Street, Inc. was required to respond to the Complaint within 20 days of service, or February 14, 2003, pursuant to Fed. R. Civ. P. 12(a). However, Teacher Street, Inc. failed to answer or otherwise respond to the Complaint by that date.

3.      On March 4, 2003, the Court entered an Order that Plaintiff file and serve a motion for entry of default and for default judgment (or provide a report as to why such motions

would be inappropriate) within 14 days of that Order. These motions are in response to that Order.

4.     Entry of default is appropriate in this case. Defendant Teacher Street, Inc. has failed to respond to the Complaint within the required time. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, insofar as this action arises under Sections 32, 43(a) and 43(c) of the Lanham Act (15 U.S.C. §§ 1114, 1125(a) & (c)). Personal jurisdiction over this Defendant is also available because the Defendant regularly transacts business in Maryland. The last known address of the defendant is 12 Forest Street, Medford, MA 02155.

5.     Entry of a default judgment likewise is appropriate in this case. The well-pleaded allegations of the Complaint, admitted as a result of Defendant's default, establishes Plaintiff's entitlement to relief. The Defendant is not an infant or incompetent person, yet has failed to appear, even as of the date of these motions. Further, the remedy sought by the Plaintiff by way of this default judgment – a permanent injunction – is further supported by affidavit, and the memorandum of law attached hereto. Plaintiff further requests attorneys' fees pursuant to 15 U.S.C. § 1117(a), which is likewise supported by the accompanying memorandum pursuant to Local Rule 109.

WHEREFORE, Plaintiff Teaching Strategies, Inc. respectfully requests that this Court enter the attached proposed Orders, entering a default in the first such Order, and in the second, entering a default judgment against the Defendant, Teacher Street, Inc., including a permanent injunction with the parameters and requirements therein proposed, and an award of costs and attorneys' fees.

Dated:  March 19, 2003

Respectfully submitted,

Norm D. St. Landau
Brian A. Coleman (#15310)
Mary Pat Weyback
DRINKER BIDDLE & REATH LLP
1500 K Street, NW
Suite 1100
Washington, DC 20005
Telephone: (202) 842-8800
Facsimile: (202) 842-8465

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TEACHING STRATEGIES, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. WMN 02 CV 35 61 |
| ) | |
| **TEACHER STREET, INC.** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR DEFAULT JUDGMENT WITH
## PERMANENT INJUNCTION AND ATTORNEYS' FEES

Plaintiff Teaching Strategies, Inc. ("Teaching Strategies") respectfully submits this memorandum of law in support of its request for entry of a permanent injunction and award of attorneys' fees in connection with its Motion for Entry of Default and for Default Judgment against Defendant Teacher Street, Inc. ("Teacher Street").

I.    **INTRODUCTION**

As set forth in accompanying motions, Teacher Street has failed to respond to Teaching Strategies' complaint for trademark infringement, unfair competition and dilution in connection with Teacher Street's continuing and unauthorized use of Teaching Strategies' federally-registered CREATIVE CURRICULUM trademark.    Accordingly, Teaching Strategies has requested entry of default and a default judgment, and for its relief, Teaching Strategies has requested a permanent injunction and an award of attorneys' fees and costs.  This memorandum is provided to further explain and support Teaching Strategies' entitlement to a permanent injunction and attorneys' fees and costs.

As set forth below, under established trademark law, a permanent injunction is a proper remedy under the now-admitted facts alleged in the complaint, and the sworn affidavit attached hereto. Further, an award of attorneys' fees is proper because this case should be classified as "exceptional" within the meaning of 15 U.S.C. § 1117(a), in that the admitted facts and record before the Court demonstrate a willful, deliberate infringement of Teaching Strategies' federally-registered trademark that continued despite cease and desist letters sent in good faith by Teaching Strategies.

## II.    **FACTUAL BACKGROUND**

The following facts have been alleged in the Complaint ("Compl.") (and are deemed admitted by virtue of Teacher Street's default), and are further supplemented by the Affidavit of Lawrence Bram ("Bram Aff.") attached hereto as Exhibit A.

Teaching Strategies is the owner of an incontestable federal trademark registration, Reg. No. 1,512,624, as well as common law rights, for the mark CREATIVE CURRICULUM for "early childhood education training books." A copy of the federal registration is attached as Exhibit A to the Complaint. See Compl. at ¶¶ 9-11 & Exhibit A thereto.

Teaching Strategies has used the CREATIVE CURRICULUM mark since 1978 in connection with numerous books, videos, computer software, as well as seminars and conferences and Internet-based services in the field of early childhood education. See Compl. at ¶¶ 6-9; Bram Aff. at ¶¶ 2-3. Since 1990, Teaching Strategies has sold in excess of $18,000,000.00 in products and services under the CREATIVE CURRICULUM mark, which represents over $30,000,000.00 in retail sales. See Compl. at ¶ 12; Bram Aff. at ¶ 4. Teaching Strategies and its distributors have spent millions of dollars promoting products bearing this mark. See Compl. at ¶ 13 & Exhibit B thereto. As a result, the CREATIVE CURRICULUM

has become famous and distinctive throughout the United States, and is a source indicator of Teaching Strategies' high-quality products and services. <u>See</u> Compl. at ¶ 14.

In September, 2002, Teaching Strategies discovered that Teacher Street had created and was offering for sale a bundled educational software product intended for use in the classroom which it identified by the mark CREATIVE CURRICULUM TOOLS. <u>See</u> Compl. at ¶ 16. Representative samples of Teacher Street's website are attached as Exhibit C to the Complaint, in which these goods are marketed to the public.

Teacher Street's use of the CREATIVE CURRICULUM TOOLS mark will cause consumers to be confused regarding the source of Teacher Street's product, and constitutes ongoing infringement and dilution of Teaching Strategies' famous registered CREATIVE CURRICULUM mark. See Compl. at ¶¶ 18, 22, 24-37.

In letters dated September 12, 2002 and September 25, 2002, copies of which are attached to the Complaint as Exhibit D, counsel for Teaching Strategies made written request to Teacher Street to cease and desist from further sale of any product employing the CREATIVE CURRICULUM mark. <u>Id.</u> at ¶ 19. Similar oral requests were likewise made. <u>Id.</u> at ¶ 20. However, Teacher Street failed to respond to Teaching Strategies demands in any way, and in fact continued its infringing use of the CREATIVE CURRICULUM mark. <u>Id.</u> at ¶ 21.

Teacher Street's willful, wanton conduct, if not enjoined, will cause immediate and irreparable injury to Teaching Strategies. <u>Id.</u> at ¶¶ 22, 28, 32, 37, 41.

**III.**    **<u>ARGUMENT</u>**

    A.    <u>Teaching Strategies is Entitled to a Permanent Injunction</u>.

The test for injunctive relief under the Lanham Act requires a showing by the plaintiff that (1) it has a valid, protectable trademark, and (2) the defendant's use of the colorable

imitation is likely to cause confusion among consumers. See e.g. Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 930 (4th Cir. 1995). Here, Teacher Street's admission of the factual allegations in the Complaint plainly demonstrates Teaching Strategies' entitlement to an injunction under the Lanham Act. Further, even apart from these admissions, the record is abundantly clear that Teaching Strategies can demonstrate a valid, protectable trademark, and a likelihood of confusion between products bearing Teaching Strategies' CREATIVE CURRICULUM trademark and Defendant's infringing CREATIVE CURRICULUM TOOLS product.[1]

---

[1]  There is no independently-required showing of irreparable harm.  "[I]n the context of a trademark infringement action, a number of courts have adopted the reasoning that 'a finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." Lone Star, 43 F.3d at 938, citing Wynn Oil Co. v. American Way Service Corp., 943 F. 2d. 595, 608 (6th Cir. 1991) (additional citations omitted). Further, "legal scholars recognized that an 'injunction is almost routinely issued when infringement is shown." Lone Star, 43 F 3d at 938, citing Dan B. Dobbs, Dobbs Law of Remedies, § 6.4(5) at 95 (2d ed. 1993).

  Although the Fourth Circuit has not yet specifically applied this presumption, it has "recognized that, regardless of any potential injury to sales or to the mark itself, trademark infringement primarily represents an injury to reputation." Lone Star, 43 F.3d at 939, citing Communication Satellite Corp. v. Comcet, Inc., 429 F .2d 1245, 1250 (4th Cir. 1970) (citation omitted). The Court in Lone Star further quoted with favor a district court holding that

> [infringement] gives rise to irreparable injury, in that plaintiff has lost control of its business reputation to this extent, there is substantial likelihood of confusion of the purchasing public, there may be no monetary recovery available, and there is an inherent injury to the good will and reputation of plaintiff." Id., citing Philip Morris v. MidWest Tobacco, Inc., 9 U.S. P.Q. 2d (BNA) 1210 (E.D. Va. 1988) (additional citations omitted).

Plaintiff urges that there is no monetary recovery available that would compensate for the irreparable harm caused to it by the confusion of its customers, the injury to its reputation and the loss of goodwill it has built up in the CREATIVE CURRICULUM mark. A permanent injunction is necessary in view of the Defendant's ongoing and blatant infringement of Plaintiff's mark.

1.    <u>Teacher Street's Admissions Establish Teaching Strategies' Right to an</u>
<u>Injunction</u>.

It is settled law that a party in default has admitted all of the well-pled allegations in the complaint. <u>See</u> <u>Ryan v. Homecomings Fin. Network</u>, 253 F.3d 778, 780 (4th Cir. 2001). It is also clear that such admissions may form the basis of an injunction. <u>See</u>, <u>e.g.</u>, <u>Christian Science Board of Directors of the First Church of Christ v. Nolan</u>, 259 F.3d 209 (4th Cir. 2001) (affirming order permanently enjoining defaulting defendant from infringing trademarks).

In this regard, the first of the two prerequisites to obtaining an injunction identified in <u>Lone Star</u> is satisfied in that Teacher Street has admitted that Teaching Strategies is the owner of incontestable Reg. No. 1,512,624, CREATIVE CURRICULUM for "early childhood education training books." <u>See</u> Compl. at ¶ 9. Indeed, a copy of the registration is attached to the Complaint event. <u>See</u> <u>id.</u> at ¶ 9, Exhibit A thereto. This incontestable federal trademark registration is "conclusive evidence of the validity of the registered mark and of the registration o f the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the mark in commerce." <u>Lone Star</u>, 43 F.3d. at 930, citing 15 U.S.C. §1115(b).

Regarding the second requirement, the standard for likelihood of confusion under which a court may grant injunctive relief for trademark infringement is established in 15 U.S.C. § 1114(1). Under the statute, the analysis turns on whether the use of the accused copy or imitation of the registered trademark i s " likely t o c ause c onfusion, o r t o c ause m istake, o r t o deceive." <u>Pizzeria Uno Corp. v. Temple</u>, 747 F.2d 1522, 1527 (4th Cir. 1984), citing 15 U.S.C. §1114(1). Here again, Teacher Street has admitted these material allegations in the Complaint by failing to respond. <u>See</u> Compl. at ¶¶ 18, 25-27.

Accordingly, Teacher Street's admissions having satisfied the <u>Lone Star</u> requirements, a permanent injunction is entirely proper.[2]

2.    <u>Teacher Strategies is Entitled to an Injunction in Any Event</u>.

Even apart from Teacher Street's admissions, is clear that Teaching Strategies can satisfy the standards of § 1114(1) on its merits. Though concededly superfluous in view of Teacher Street's default, Teaching Strategies nonetheless offers the following analysis.

In evaluating whether a defendant's use is likely to cause confusion among consumers, the Fourth Circuit has determined that seven factors must be considered: (1) the strength or distinctiveness of plaintiff's mark; (2) the similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities that the two parties use in their businesses; (5) the similarity of advertising the two parties use; (6) the defendant's intent; and (7) actual confusion. <u>Lone Star</u>, 43 F.3d at 933, citing <u>Pizzeria Uno Corp. v. Temple</u>, 747 F.2d 1522 (4th Cir. 1984); <u>see also</u> <u>Sara Lee Corp. v. Kayser-Roth Corp.</u>, 81 F.3d 455 (4th Cir. 1996). Teaching Strategies is not required to establish that each of these factors favors a finding of confusion, and "importantly, not all of these factors are of equal relevance in every case." <u>Lone Star</u>, 43 F.3d at 933. Moreover, "the Fourth Circuit has emphasized that a trademark owner need not demonstrate actual confusion." <u>Id.</u> In the case at bar, consideration of and balancing these factors fully supports a judicial finding of likelihood of confusion, as set forth below.

---

[2] Similarly, Teaching Strategies is entitled to an injunction because Teacher Street has admitted the material allegations of the dilution claim. <u>See</u> Compl. at ¶¶ 14-15, 33-37; <u>Rhee Bros. Inc. v. Han Ah Reum Corp.</u>, 178 F. Supp. 2d 525, 528-529 (D. Md. 2001) (setting forth elements of a dilution claim); <u>accord</u> <u>Porsche Cars North Am. V. Poersche.net</u>, 302 F.3d 248, 261 ("[i]f proved, a trademark-dilution claim entitles a plaintiff to an injunction that prevents a diluter from using the plaintiff's trademark").

a.    Strength of Plaintiff's Marks

Teaching Strategies' claim to its CREATIVE CURRICULUM mark is strong. Teaching Strategies owns a federally registration for CREATIVE CURRICULUM, which constitutes prima facie evidence of (1) the validity and distinctiveness of the trademark, (2) Teaching Strategies' ownership of and exclusive right to use the trademark, and (3) nationwide constructive notice of Teaching Strategies' claim of ownership. See 15 U.S.C. §§ 1057(b), 1072, and 1115(a). Moreover, the mark in question is incontestable. "[T]his incontestable status does entitle the mark to substantial protection." Lone Star, 43 F. 3d at 935, citing Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., Inc., 799 F.2d 867, 871 (2d Cir. 1986).

Just as importantly, Plaintiff has extensively used and promoted the CREATIVE CURRICULUM mark throughout the world, with advertising and promotional expenditures in the millions of dollars, resulting in total sales of nearly $18,000,000 of products and services under the CREATIVE CURRICULUM mark. See Bram Aff. at ¶ 4. As a result of Plaintiff's efforts, the CREATIVE CURRICULUM mark has achieved a high level of recognition in the field of early childhood education and, indeed, the CREATIVE CURRICULUM® educational program has long been the standard in early childhood education, as evidenced by its being chosen as the preschool program by innumerable government agencies and school districts throughout the United States, including the U.S. Department of Defense Dependent Care Programs, the Los Angeles Unified School District, which is the second largest school district in the United States, and the Broward County, Florida School District, which is the fourth largest school district in the United States. In addition, the CREATIVE CURRICULUM® preschool program is the program most used by Head Start programs throughout the country.  See Bram Aff. at ¶ 5.  This high level of recognition, combined with over 25 years of development and

promotion, makes the CREATIVE CURRICULUM mark a strong one, entitled to the broadest legal protection.

This factor clearly weighs in Teaching Strategies' favor.

      b.    The Similarity of the Marks

The marks in question are CREATIVE CURRICULUM and CREATIVE CURRICULUM TOOLS. "[T]his Court has reasoned that the marks need only be sufficiently similar in appearance, with greater weight given to the dominant or salient portions of the marks. In this case, the dominant portions of the marks . . . is the same, causing a strong likelihood of confusion." Lone Star 43 F.3d at 936, citing Pizzaria Uno, 747 F.2d at 1529-30, 1534-35. The "dominant portion" of the marks in question is clearly CREATIVE CURRICULUM. The two "cs" at the beginning of each word create an alliteration that ties the words together both in sound and appearance. The term "tools" is not distinctive. Thus, the dominant portions of the marks are identical.

The Defendant has utilized the whole of Plaintiff's mark, adding only the non-distinctive term "tools." It is well settled that a junior user which incorporates the entire mark of another cannot avoid confusion simply through the addition of a non-distinctive element. See J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, 4th Ed., § 23.50 and cases cited therein. Indeed, in the case of a trademark as famous as Plaintiff's, anyone seeing a product identified as "CREATIVE CURRICULUM *Anything*" in the educational field is more than likely to believe the product originated with Plaintiff.

"This identity of the dominant term in both marks is a strong indicator of that similarity in appearance and sound which would result in confusion." Pizzeria Uno, 747 F.2d at 1534. Clearly, the near identity of the marks CREATIVE CURRICULUM and CREATIVE

CURRICULUM TOOLS greatly increases the likelihood that the consuming public will confuse the products, and this factor weighs heavily in Plaintiff's favor.

c.    The Relatedness of the Products of Services

As demonstrated in the Exhibits attached to the Complaint, Plaintiff's CREATIVE CURRICULUM mark is used on a wide variety of books, videos and computer software, and is promoted in the offering of seminars and conferences on the subject of early childhood education. Defendant is selling a bundle of educational computer software, CREATIVE CURRICULUM TOOLS, which is described on the packaging as "K-6." The product is described in Defendant's advertising as "a selection of the BEST classroom technology tools combined with a complete set of Classroom-Ready Resources.™" Teaching Strategies' CREATIVE CURRICULUM products encompass an entire "approach" to learning, including curriculum, assessment and observation, training materials, and reporting tools. Various products come in both written and software form, and teachers may license access to CREATIVECURRICULUM.net, an additional computer-based educational tool.

There can be no doubt that the goods of Plaintiff and Defendant are directly related. Indeed, one familiar with the CREATIVE CURRICULUM early childhood educational product line would easily assume that CREATIVE CURRICULUM TOOLS "K-6" is an extension of Teaching Strategies' successful CREATIVE CURRICULUM line of educational products. Defendant clearly seeks to capitalize on consumer recognition of Teaching Strategies' mark.

Both Teaching Strategies and the Defendant are selling computer-based childhood educational products designed for sale to educators for use in the classroom environment. There can be no question that the products are "related," in a confusingly similar way. Thus, this factor also weighs in favor of finding confusion.

- 9 -

d.    Similarity of the Facilities that the Two Parties Use

"Because the facilities used by the parties are generally not seen by the public, this factor is less significant than the others." The Gazette Newspapers, Inc. v. The New Paper, Inc., 934 F.Supp. 688, 696 (D.Md. 1996).

Plaintiff's intended customers, which, as further explained above, are the same as those of Defendant, are likely to be unfamiliar with the facilities that either party uses to create their respective CREATIVE CURRICULUM products, and are further unlikely to concern themselves with this fact. "Nonetheless, [the parties'] channels of trade – if not their physical facilities – are quite similar." A.C. Legg Packaging Company, Inc. v. Olde Plantation Spice Company, Inc., 61 F. Supp. 2d 426, 431 (D. Md. 1999). Both parties seek to sell computer-based childhood educational products to educators, teachers and administrators. Because both Teaching Strategies and Defendant use similar channels of trade, customers are likely to encounter both products and are apt to believe those products come from the same source.

e.    Similarity of Advertising

Both parties advertise and sell their CREATIVE CURRICULUM products on their Internet websites. Defendant's product is relatively new, and additional evidence of similarity in advertising is not currently available. However, since both Plaintiff and Defendant target the same consumers on a nationwide basis, it is highly likely that their advertisements would coincide. For purposes of analyzing Plaintiff's likely success in succeeding on its claim of infringement, it is clear that the parties currently use at least one form of advertisement – the Internet – that is identical. This factor also weighs in Plaintiff's favor.

f.    Defendant's Intent

"The intent of the defendant is sometimes a major factor in infringement cases.  If there is intent to confuse the buying public, this is strong evidence establishing likelihood of confusion . . . . But if there is good faith belief that a subsequently-adopted mark will not lead to confusion, however, that intent is no defense if a court finds actual or likelihood of confusion." Pizzaria Uno, 747 F.2d at 1534.

In the instant case, there is no direct evidence regarding Defendant's intent, apart from its admission in ¶ 22 that it acted "with knowledge" and in a "wanton" manner.  However, in view of the fame of Plaintiff's mark in the field of childhood education, it is difficult to imagine that Defendant's adoption of a mark which incorporates Plaintiff's mark *in its entirety* was merely coincidental.  Further, Defendant's persistence even after receiving cease-and-desist letters counsels strongly in favor of a finding of willful infringement.  See Argument, Part B, infra.

g.    Actual Confusion

The Fourth Circuit has emphasized that a trademark owner need not demonstrate actual confusion in order to establish trademark infringement. Lonestar, 43 F.3d at 933.  Since Defendant o nly recently b egan marketing its CREATIVE CURRICULUM TOOLS product – and since Plaintiff was unable to obtain discovery from Defendant due to its default – there is no available evidence of actual confusion.  Given that the Defendant would have be the most likely source of this evidence (i.e., having received inquiries from customers believing that Defendant's products bearing Plaintiff's mark actually emanated from Plaintiff), this lack of evidence of actual confusion is insignificant.

Based on a weighing of all the foregoing factors, Teaching Strategies has clearly demonstrated that there is a likelihood of confusion.  This fact, coupled with the plain existence

of a valid, protected trademark, entitles Teaching Strategies to an injunction even apart from Teacher Street's capitulation via default.[3]

B.    Teaching Strategies Should be Permitted to Recover its Attorneys' Fees.

In a trademark infringement case, the Court may award attorneys' fees if the case is deemed "exceptional" under 15 U.S.C. § 1117(a). See People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 370 (4th Cir. 2001). In this regard, "a case is 'exceptional' if the defendant's conduct was 'malicious, fraudulent, willful or deliberate in nature.'" Id. The district court enjoys broad discretion in determining whether such an award is appropriate. Id.

In this case, an award of fees is appropriate because Teacher Street's infringement was willful and deliberate. The fact which most clearly demonstrates this is the fact that Teacher Street's infringement continued even after Teaching Strategies sent two cease and desist letters to Teacher Street in September 2002, more than two months before this suit was filed. See Compl. at ¶ 19 & Exhibit D thereto. These letters were followed by two telephone calls in late September and early October. See Compl. at ¶ 20. Teacher Street never responded in any way, see Compl. at ¶ 21, yet continued to conduct business, forcing Teaching Strategies to file this suit. Thus even if could be argued that Teacher Street's use of the CREATIVE CURRICULUM mark was inadvertent – a far-fetched proposition in its own right – it is unquestionably clear that

_____

[3] "The goal of trademark protection is to allow a firm to affix an identifying mark to its product (or service) offering that will, because it is distinctive and no competitor may use a confusingly similar designation, enable the consumer to discover in the least possible amount of time and with the least possible amount of head-scratching whether a particular brand is that firm's brand or a competitor's brand." Advanced Resources International, Inc. v. Tri-Star Petroleum Company, 4 F.3d 327, 335 (4th Cir. 1993), citing Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc., 781 F.2d 604, 609 (7th Cir. 1986). Here, Defendant's actions have placed Teaching Strategies' control over its trademark in jeopardy and placed both parties' customers in a state of confusion by its attempts to reap the benefits of the CREATIVE CURRICULUM trademark.

Teacher Street's infringement was willful and deliberate after its receipt of the September 12, 2002 cease and desist letter from Teaching Strategies.

This Court has reached an identical conclusion on similar facts in <u>A.C. Legg Packing Co., Inc. v. Olde Plantation Spice Co., Inc.</u>, 61 F. Supp. 2d 426 (D. Md. 1999) (Messitte, J.).  In that case, the Court held:

> The Court has found OPSC acted willfully after it received A.C. Legg's October, 1997 cease and desist letter.  In consequence, A.C. Legg was eventually forced to litigate its claim wholly apart from the legal expenses it incurred while OPSC stalled for time while trying to register its mark.
>
> The Court believes A.S. Legg is at least entitled to reasonable attorneys fees and costs from the point of preparing and filing this lawsuit forward.

61 F. Supp. 2d 426, 434.

Similarly here, despite numerous attempts through counsel to make contact with the principals of Teacher Street, Defendant has ignored Plaintiff's repeated requests to cease use of Plaintiff's CREATIVE CURRICULUM mark. Teacher Street has now similarly ignored the requirement that it answer Plaintiff's complaint in this matter.  An award of attorneys' fees and costs for this willful, deliberate infringement is therefore appropriate under 15 U.S.C. § 1117(a).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff moves this Court for an Order permanently enjoining and restraining Defendant (as set forth in the accompanying proposed order) from:

a. Using, promoting, advertising, or displaying in any manner, directly or indirectly the trademark CREATIVE CURRICULUM, or any mark or designation confusingly similar to the CREATIVE CURRICULUM.

b. Producing, distributing, offering to sell, or selling in any manner, directly or indirectly, including via the Internet:

1.    products identified by the CREATIVE CURRICULUM mark or by any mark or designation confusingly similar to the CREATIVE CURRICULUM mark;

2.    any product in any packaging that is identical to, or confusingly similar to, the product packaging for Plaintiff's CREATIVE CURRICULUM products.

Additionally, because this case is exceptional within the meaning of 15 U.S.C. § 1117(a), Teaching Strategies requests that Teacher Street should be ordered to pay over to Plaintiff the reasonable attorney's fees and costs Plaintiff has been forced to incur in pursuing relief through resort to this lawsuit. This is also incorporated within the accompanying proposed order, with a requirement that the Plaintiff submit an affidavit concerning the amount requested.

Respectfully submitted,

Norm D. St. Landau
Brian A. Coleman (#15310)
Mary Pat Weyback
DRINKER BIDDLE & REATH LLP
1500 K Street, NW
Suite 1100
Washington, DC 20005
Telephone: (202) 842-8800
Facsimile: (202) 842-8465

**EXHIBIT A**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TEACHING STRATEGIES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. WMN 02 CV 35 61 |
| | ) |
| TEACHER STREET, INC. | ) |
| | ) |
| Defendant. | ) |
| | ) |

## AFFIDAVIT OF LAWRENCE A. BRAM

I, Lawrence A. Bram, solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the following paper are true:

1.     I am Director of Marketing and Business Development of Teaching Strategies, Inc. I have been employed with Teaching Strategies, Inc. for 71/2 years.

2.     Teaching Strategies has used the CREATIVE CURRICULUM mark since 1978 in connection with numerous books, videos, computer software, as well as seminars and conferences and Internet-based services in the field of early childhood education.

3.     Teaching Strategies is engaged in the development, production, sale and distribution of a wide array of early childhood educational products, including books, videos, and software programs throughout the United States and abroad. Teaching Strategies also offers seminars, conferences and Internet-based services under the CREATIVE CURRICULUM mark. Teaching Strategies offers its products to educators, early childhood caregivers and the general public.

NS

4.      Plaintiff has extensively used and promoted the CREATIVE CURRICULUM mark throughout the world, with advertising and promotional expenditures in the millions of dollars, resulting in total sales of nearly $18,000,000 of products and services under the CREATIVE CURRICULUM mark.

5.      The CREATIVE CURRICULUM educational program has been chosen as the preschool program by innumerable government agencies and school districts throughout the United States, including the U.S. Department of Defense Dependent Care Programs, the Los Angeles Unified School District, which is the second largest school district in the United States, and the Broward County, Florida School District, which is the fourth largest school district in the United States. In addition, the CREATIVE CURRICULUM preschool program is the program most used by Head Start programs throughout the country.

Executed this _15th_ day of March, 2003

Lawrence A. Bram

## <u>CERTIFICATE REGARDING SERVICE</u>

I HEREBY CERTIFY that on this <u>19</u><sup>th</sup> day of March, 2003, a copy of the foregoing Motion for Entry of Default and for Default Judgment, Memorandum in support thereof, and proposed order, was sent via first class mail, postage prepaid to:

Teacher Street, Inc.
c/o Christoper Werler
12 Forest Street
Medford, MA 02155

_____
Brian A. Coleman

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TEACHING STRATEGIES, INC.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. WMN 02 CV 35 61 |
| | ) |
| **TEACHER STREET, INC.** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER OF DEFAULT

Upon consideration of Plaintiff Teaching Strategies, Inc.'s Motion for Entry of Default against Defendant Teacher Street, Inc., and it appearing that Defendant has failed to answer or otherwise respond to Plaintiff's complaint within the required time;

IT IS HEREBY ORDERED that Plaintiff's motion for entry of default against Defendant Teacher Street, Inc. is GRANTED, and Defendant Teacher Street, Inc. is hereby in default.


Date:_____          _____
                                       Clerk

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **TEACHING STRATEGIES, INC.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. WMN 02 CV 35 61 |
| | ) |
| **TEACHER STREET, INC.** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## JUDGMENT BY DEFAULT AND PERMANENT INJUNCTION

Upon consideration of Plaintiff Teaching Strategies, Inc.'s ("Teaching Strategies") Motion for Default Judgment against Defendant Teacher Street, Inc. ("Teacher Street"), for failure to appear, answer or otherwise defend the Plaintiff's complaint;

IT IS HEREBY ORDERED that Plaintiff's Motion for a Default Judgment against Defendant Teacher Street is GRANTED; and it is further

ORDERED that Defendant Teacher Street is, from this day forward, permanently enjoined from:

      a.    Using, promoting, advertising, or displaying in any manner, directly or indirectly the trademark CREATIVE CURRICULUM, or any mark or designation confusingly similar to the CREATIVE CURRICULUM.

      b.    Producing, distributing, offering to sell, or selling in any manner, directly or indirectly, including via the Internet:

           (1)   products identified by the CREATIVE CURRICULUM mark or by any mark or designation confusingly similar to the CREATIVE CURRICULUM mark;

(2)    any product in any packaging that is identical to, or confusingly similar to, the product packaging for Plaintiff's CREATIVE CURRICULUM products; and it is further

ORDERED that, because the Court finds that this case is exceptional within the meaning of 15 U.S.C. § 1117(a) in view of the blatant nature of the infringement involved herein and the failure of Defendant Teacher Street to cease and desist even after receiving a good faith request from Plaintiff to do so, Defendant Teacher Street is hereby ordered to pay over to Plaintiff the reasonable attorneys' fees and costs Plaintiff has been forced to incur in pursuing relief through resort to this lawsuit. Plaintiff shall file an affidavit with this Court concerning said attorneys' fees and costs within 20 days of the entry of this Order, to which Plaintiff will have 20 days to file any objections concerning the amount requested.

Date:_____          _____

                                        United States District Judge